1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   E.W., A minor, By and              No. 2:05-cv-0194-MCE-DAD
     Through C.W., his Guardian
12   Ad Litem,

13          Plaintiff,

14       v.                             <u>MEMORANDUM AND ORDER</u>

15   ROCKLIN UNIFIED SCHOOL
     DISTRICT and PLACER COUNTY
16   OFFICE OF EDUCATION,

17          Defendants.

18                         ----oo0oo----

19

20       This case arises from a dispute regarding the provision of

21   educational services to a disabled child, Plaintiff E.W.

22   ("Plaintiff").  Plaintiff, through his guardian ad litem, has

23   sued the Rocklin Unified School District and the Placer County

24   Office of Education (hereinafter collectively referred to as

25   "Defendants" unless otherwise noted) for alleged violations of

26   the Individuals with Disabilities Education Act, 20 U.S.C. §

27   1401, et seq. ("IDEA").

28   ///

                                1

Plaintiff's dispute was originally adjudicated through a lengthy due process hearing conducted through the auspices of the California Special Education Hearing Office ("SEHO"). Through the present action, Plaintiff takes issue with most of the Hearing Officer's findings.

Defendants now move for summary judgment on grounds that the preponderance of the evidence supports the Hearing Officer's findings that, with certain very limited exceptions, Defendants complied with their obligations under the IDEA in providing Plaintiff with a free and appropriate public education ("FAPE"). Plaintiff has filed a cross motion for summary judgment seeking to overturn the Hearing Officer's decision. For the reasons set forth below, the Court agrees with the defense position and summary judgment in favor of Defendants will be granted.

## BACKGROUND

Plaintiff E.W. was diagnosed with autism on November 8, 2002, just after he turned two on October 12, 2002. Plaintiff has further been diagnosed with apraxia, a neurological disorder which affects the planning and production of speech. He consequently suffers from deficits in academics, expressive and receptive language, motor skills, social and behavioral skills, self-help, and sensory processing integration.

///
///
///
///

2

1     As a child with disabilities who resided within the
2  boundaries of Defendant Rocklin Unified School District
3  ("District"), Plaintiff was entitled to receive special education
4  and related services, through the auspices of the District and
5  co-Defendant Placer County Office of Education ("PCOE"), in
6  accordance with the provisions of both the IDEA and state law as
7  set forth in California Education Code § 56000, et seq.
8  Defendants were required under these provisions to provide, at
9  public expense, Plaintiff with a FAPE that includes both special
10  education and related services meeting his unique needs.
11  Plaintiff, through his guardian ad litem, claims that Defendants
12  failed to satisfy these obligations in the provision of such
13  educational services prior to the administrative hearing in this
14  matter held in June and July of 2004.

15     Plaintiff began receiving behavioral intervention services
16  prior to his third birthday from the Lovaas Institute of Early
17  Intervention ("LIFE") as well as occupational therapy, speech and
18  language therapy, and music therapy from several other private
19  providers.  (Defs.' Statement of Undisputed Material Facts
20  ("SUF") Nos. 4-6).  On September 12, 2003, Defendants convened an
21  Individualized Education Program ("IEP") meeting in order to
22  develop a FAPE for Plaintiff.  After reviewing information from
23  Plaintiff's service providers and his parents, the IEP team
24  offered Plaintiff a thirty day transitional placement in a
25  Special Day Class operated by Defendant PCOE.
26  ///
27  ///
28  ///

1   That class, denominated as Strategic Teaching by Educators and

2   Parents ("STEPS"), primarily serves preschool-aged students with

3   autism spectrum disorders and operates for three hours and forty-

4   five minutes per day, five days a week, for a total of 18.75

5   hours per week.  Defendants also offered Plaintiff related

6   services, including occupational therapy, speech and language

7   therapy, and transportation.  (See Defs.' UF Nos. 7-10, 14-16).

8        Plaintiff's parents did not consent to Defendants' proposed

9   FAPE as outlined above, and instead requested that the District

10  continue to fund the in-home applied behavioral analysis ("ABA")

11  services Plaintiff was already receiving from LIFE, as well as

12  the other clinic-based services he was already receiving.

13  (Defs.' UF No. 20).  While Defendants contended that their

14  proposed transition plan would permit the development of a

15  longer-term FAPE, no such plan was proposed before Plaintiff

16  filed a request for a due process SEHO hearing and a motion for

17  stay-put order on March 10, 2004.  Through that request,

18  Plaintiff formally asked SEHO to order that Defendants continue

19  to provide the same services previously offered before the

20  September 12, 2003 IEP meeting.

21       By decision dated March 24, 2004, SEHO issued the requested

22  stay-put order requiring that Defendants provide weekly services

23  including 23.5 hours of ABA services, two hours of speech and

24  language therapy, and one hour for each occupational and music

25  therapy.

26  ///

27  ///

28  ///

SEHO permitted the District to offer these same in-home and clinic-based services through its own providers, and with one limited exception (for music therapy services), Plaintiff's parents rejected the District's ensuing April 2, 2004 proposal to change from Plaintiff's existing therapists to services furnished through the District and PCOE.  (See Defs.' UF Nos. 22-32).

On April 23, 2004, a second IEP meeting was convened. District Staff met prior to that meeting to discuss potential placement and service options meeting Plaintiff's needs.  During the course of the meeting itself a total of seventeen annual goals, with 51 shorter-term objectives, was developed that addressed Plaintiff's needs in terms of academic, behavior, social, communication, recreation, self-help, and motor skills. According to the IEP Summary, Plaintiff's parents participated and provided input at the meeting.  (See Administrative Record, District's Exhibits[1] at pp. 1039-1081).  Caprice Schweiger, LIFE's Sacramento Director of Operations, also attended, and a report from Plaintiff's Speech and Language Therapist, Brodi Wetherbee, was received and considered.  (AR, DE at pp. 1064-66).

///

///

///

///

///

///

---

[1] Further references to the Administrative Record in this matter be abbreviated as "AR", and the District's Exhibits will be referred to as "DE".

5

1    The service offer formulated as a result of the April 23,

2  2004 IEP meeting included the following: 1) placement in the

3  STEPS classroom for 18.75 hours per week, with related speech and

4  language as well as occupational therapy to be provided in the

5  classroom setting; 2) an ABA trained one-on-one behavior

6  intervention aide in the STEPS classroom for Plaintiff's benefit;

7  3) ten hours of additional ABA behavior intervention services at

8  the STEPS school site, along with a corresponding level of

9  consultation/supervision services; 3) co-treatment between a

10 speech therapist and occupational therapist; 4) staff training in

11 ABA, generalization, and functional language; and 5) an extended

12 year ("ESY") program providing for additional services in the

13 summer. (Defs.' UF Nos. 43-44).  The District contracted with

14 Advance Kids, Inc., a nonpublic agency provider of ABA services,

15 to provide Plaintiff's ABA services as an augmentation to the

16 STEPS program .  <u>Id.</u> at No. 46.  The IEP team further proposed

17 assessments in Plaintiffs' areas of suspected disability since

18 the District had never assessed Plaintiff's abilities.  <u>Id.</u> at

19 39-40.

20    Plaintiff's parents declined to accept the service plan

21 proposed by Defendants, and did not consent to any of the

22 contemplated assessments, instead maintaining their previously

23 voiced preference that the District continue funding ABA services

24 through LIFE, along with the other private therapies already

25 being furnished to Plaintiff in the speech and language,

26 occupational and music areas.  <u>Id.</u> at Nos. 52-53.

27 ///

28 ///

1      The SEHO hearing on whether or not Defendants' IEP offers
2  constituted viable FAPEs thereafter commenced on June 8, 2004
3  before SEHO Hearing Officer Christian Hurley.  Approximately a
4  month before that hearing, on May 13, 2004, the District made an
5  unconditional offer to reimburse Plaintiff's parents for
6  educational expenses they occurred since Plaintiff's third
7  birthday (on October 12, 2003) in providing plaintiff with in-
8  home ABA services, speech and language therapy, occupational
9  therapy and music therapy.  (Defs.' UF Nos. 22-23).  Consequently
10 the Hearing Officer's ultimate decision, rendered on November 4,
11 2004 after eleven hearing days spanning a two-month period, did
12 not address the issue of reimbursement as to the period between
13 October of 2003 and April of 2004.  The SEHO Decision[2]
14 specifically states (at p. 44) that the issue was neither heard
15 or decided, and that accordingly no finding was made on that
16 issue as to prevailing party for purposes of any subsequent award
17 of attorney's fees.

18     The SEHO Decision nonetheless found that the original
19 September 2003 IEP did not meet the prerequisites for a valid
20 FAPE, since the IEP plan did not extend past a transition plan
21 for Plaintiff and did not specifically address some of
22 Plaintiff's identified deficits.  The Hearing Officer noted that
23 Defendants neither prepared an assessment plan in September of
24 2003, or scheduled another IEP meeting within thirty days of
25 their interim transitional offer as required by California
26 Government Code § 56325.  (SEHO Decision, p. 18).

27 ───────────────────
28     [2] The SEHO Decision is included within the Administrative
   Record at Pleadings and Correspondence, Vol. I, pp. 2-47.

7

Consequently, while Plaintiff prevailed at to that issue (except with respect to the need for a transition plan for the stay-put providers), the Decision went on to provide, as indicated above, that there was no prevailing party as to the remedy of reimbursement given Defendants' unconditional offer, as stated above, to pay for the interim services funded by Plaintiff's parents between October 12, 2003 and the time of the second IEP hearing on April 23, 2004.

The Hearing Officer went on to determine, however, that the April 23, 2004 IEP did meet the requirements of a FAPE.  The decision specifically rejects both the procedural and substantive violations alleged by Plaintiff with respect to that IEP. Procedurally, the Officer found that the IEP team did appropriately review and consider information presented by both Plaintiff's parents and his current service providers. (Decision, p. 21).  The Hearing Officer further found that testimony presented at the hearing led him to conclude that any pre-IEP meeting held on April 21, 2004 was for preparation of draft goals and objectives, only.  Id.  The SEHO Decision points to the fact that both the "Present Levels of Performance" and the "Discussion" sections of the IEP Summary indicate, as stated above, that information concerning Plaintiff's deficits and present level of performance were presented by Plaintiff's parents, by Caprice Schweiger of LIFE, and by Plaintiff's Speech and Language Therapist, Brodi Wetherbee.

///

///

///

8

1     On a substantive basis, the Hearing Officer found that the
2  IEP addressed the scope of Plaintiff's identified areas of need,
3  a subject on which there was little disagreement between the
4  parties, who all conceded that Plaintiff has deficits in the
5  areas of academics, behavior and social skills, speech and
6  language skills, fine and gross motor skills, visual motor
7  skills, and sensory integration for which special educational
8  instruction, speech and language therapy, and occupational
9  therapy was needed.  The only area of dispute between the parties
10  as to the scope of needed services concerns whether Defendants'
11  failure to include music therapy in their IEP offer constituted a
12  denial of FAPE.  The SEHO decision found that there was no
13  evidence establishing that Plaintiff required music therapy to
14  meet his benchmark goals and objectives in various domains.
15  (Decision, p. 24).  The Hearing Officer noted testimony from Jean
16  Crouse, the STEPS teacher, to the effect that the long-term goals
17  of music therapy were similar to those of speech and language
18  therapy, which were already addressed in the IEP by specific
19  providers.  Ms. Crouse further testified that many activities
20  utilized in music therapy were already incorporated within the
21  STEPS classroom.  Consequently, the Hearing Officer determined
22  that Plaintiff did not require music therapy, and declined to
23  find that the omission of such therapy either impinged on
24  Plaintiff's right to a FAPE or entitled him to compensatory
25  services to remedy any past deprivation of music therapy.  Id. at
26  pp. 38-39.
27  ///
28  ///

1    The real area of contention concerning provision of a FAPE,

2    according to the SEHO Decision, rests not with the identified

3    scope of Plaintiff's needs but rather on whether the particular

4    services proposed by the IEP itself were designed to meet

5    Plaintiff's particular needs in providing him with

6    educational/therapeutic benefit.  In that regard, after hearing

7    extensive testimony, the Hearing Officer rejected Plaintiff's

8    contention that the goals and objectives identified by the IEP

9    were inappropriate.  Specifically, the Hearing Officer found

10   Defendants' witnesses, including Betty DiRegolo, Susan Watts,

11   Linda Hess, and Jean Crouse, to have been persuasive in

12   testifying that the seventeen goals and objectives were designed

13   to appropriately target his areas of deficit, and that said

14   goals/objectives were sufficiently measurable.  (Decision, pp.

15   28-29).  Moreover, the Hearing Officer, after weighing the

16   testimony, concluded that the classroom-based instruction and

17   therapy (in the form of the STEPS class itself as well as speech,

18   language and occupational therapy to be provided in the

19   classroom) were suitable in that noise and distractions could be

20   effectively minimized.  (Id. at pp. 30-33).  Finally, in response

21   to Plaintiff's contention that Defendants' staff were not

22   appropriately qualified to teach Plaintiff, the Hearing Officer

23   concluded on the basis of the testimony presented that such

24   staff, including the STEPS teacher, Jean Crouse, and Speech and

25   Language Therapist Linda Hess, were qualified and that ABA

26   services to be provided by Advance Kids would be effective in

27   meeting his behavioral intervention needs.  (Id. at pp. 31-32,

28   34).

1    Finally, with respect to Defendants' Assessment Plan dated

2  April 23, 2004 and updated June 3, 2004, the Hearing Officer

3  found that neither the District or the PCOE had ever formally

4  assessed Plaintiff before, and that prior assessments performed

5  by LIFE were distinguishable from those sought by Defendants,

6  which must comply with the requirements of California Education

7  Code § 56230.  The SEHO decision consequently found that the

8  proposed assessments were indeed necessary.  (Id. at p. 41).

9    Plaintiff timely commenced the present action, which seeks

10 to overturn the Hearing Officer's decision, on January 27, 2005.

11

12                            **STANDARD**

13

14    The standard for district court review of an administrative

15 decision under the IDEA is set forth in 20 U.S.C. § 1415(e)(2),

16 which provides as follows:

17

18       "In any action brought under this paragraph the court shall
         receive the records of the administrative proceedings, shall
19       hear additional evidence at the request of a party, and,
         basing its decision on the preponderance of the evidence,
20       shall grant such relief as the court determines is
         appropriate."

21

22    This standard requires that "due weight" be given to the

23 administrative proceedings.  Bd. Of Educ. of the Hendrick Hudson

24 Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  The

25 amount of deference so accorded is subject to the court's

26 discretion.  Gregory K. v. Longview Sch. Dist., 811 F.2d 1307,

27 1311 (9th Cir. 1987).

28 ///

                                  11

1    In making that determination, the thoroughness of the hearing

2    offer's findings should be considered, with the degree of

3    deference increased where said findings are "thorough and

4    careful". Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d

5    884, 892 (9th Cir. 1995), citing Union Sch. Dist. v. Smith, 15

6    F.3d 1519, 1524 (9th Cir. 1994).  "Substantial weight" should be

7    given to the hearing officer's decision when it "evicnes his

8    careful, impartial consideration of all the evidence and

9    demonstrates his sensitivity to the complexity of the issues

10   presented. County of San Diego v. Cal. Special Educ. Hearing

11   Office, 93 F.3d 1458,, 1466 (9th Cir. 1996), quoting Ojai Unified

12   Sch. Dist. v. Jackson, 4 F.3d 1467, 1476 (9th Cir. 1993)  Such

13   deference is appropriate because "if the district court tried the

14   case anew, the work of the hearing officer would not receive 'due

15   weight,' and would be largely wasted." Capistrano, 59 F.3d at

16   891.

17        Because of the deference potentially accorded the

18   administrative proceedings, complete de novo review is

19   inappropriate. Amanda J. v. Clark County Sch. Dist., 267 F.3d

20   877, 887 (9th Cir. 2001).  Instead, the district court must make

21   an independent judgment based on a preponderance of the evidence

22   and giving due weight to the hearing officer's determination.

23   Capistrano, 59 F.3d at 892.  After such determination, the court

24   is free to accept or reject the hearing officer's findings in

25   whole or in part.  Ojai Unified Sch. Dist., 4 F.3d at 1473-73.

26   Even if the review is styled as a motion for summary judgment,

27   the procedure is in substance an appeal from an administrative

28   determination.  Id.

1

**ANALYSIS**

2

3      Both sides agree that this case should be resolved through
4   summary judgment.  (See Pl.s' Mot. for Summ. J., 4:3-5; Defs.'
5   Opp. to Pl.'s Mot. for Summ. J., 2:6-7.)  Because neither side
6   has sought submit any additional evidence, this Court in essence
7   reviews the decision of the Hearing Officer, and the
8   administrative record, on an appellate basis.  As indicated
9   above, it must use its independent judgment to determine whether
10  the Hearing Officer's decision is supported by a preponderance of
11  the evidence as evinced by the record.  Capistrano, 59 F.3d at
12  892.

13      Significantly, as also set forth above, it would be
14  inappropriate for this Court to try the case anew, and due weight
15  must be given to the hearing officer's decision commensurate with
16  the level of careful consideration demonstrated by the decision
17  itself.  Capistrano, 59 F.3d at 891-92.

18      In Capistrano, the Ninth Circuit reviewed the district
19  court's adoption of the Hearing Officer's findings following an
20  administrative IDEA hearing that involved ten days of testimony
21  and the consideration of extensive exhibits.  Noting that the
22  Hearing Officer issued a twenty-six page single spaced decision
23  that reviewed the evidence in detail (59 F.3d at 888), the Ninth
24  Circuit described said decision as "especially careful and
25  thorough", so that the district court, in reaching the same
26  conclusions, "appropriately exercised [its] discretion to give it
27  quite substantial deference".  Id. at 892.

28  ///

13

Similarly, <u>County of San Diego</u>, another Ninth Circuit case, approved substantial weight being accorded by the district court where the hearing officer's analysis was "intensive and comprehensive".  <u>County of San Diego v. Special Ed. Hearing Office</u>, 93 F.3d at 1467.

The Hearing Officer's decision in this matter, like the <u>Capistrano</u> and <u>San Diego</u> cases, was not only "careful and thorough" but also "intensive and comprehensive".  Its forty-five singled space pages provide a thorough application of the facts of this matter to the relevant legal contentions made by the parties.  The Hearing Officer explained the basis of his opinions, the inferences he drew from the testimony and from the documentary record, and his rationale for affording greater weight to certain evidence and/or testimony.  On the basis of all those factors, the Hearing Officer's decision is clearly entitled to substantial deference, as discussed in more detail below.

**A.  Meaningful Participation/Predetermination in Development of IEP.**

Plaintiff first argues that the procedural safeguards of the IDEA were violated because the April 23, 2004 IEP was developed without meaningful participation either from his parents or on the part of his current service providers.  Plaintiff contends that Defendants' placement offer was in fact predetermined in advance at a "pre-IEP" meeting held between District representatives several days prior to the April 23, 2004 hearing.  Neither Plaintiff's parents or the individuals treating him attended that meeting.

1    In <u>W.G. v. Bd. of Tr. of Target Range School District</u>, 960

2 F.2d 1479, 1483 (9th Cir. 1992), the Ninth Circuit recognized the

3 requirement for parental participation in the IEP formulation

4 process, and found that procedural inadequacies which "seriously

5 infringe" on the opportunity for such parental participation may

6 constitute denial of a FAPE.  The <u>W.G.</u> court further recognized

7 that participation must be meaningful, and not pro forma only, to

8 pass muster under the IDEA.  <u>See id.</u> at 1485.  A predetermined

9 placement decision obviously would not satisfy this standard.

10    In the present matter, it is uncontroverted that some of the

11 participants in the April 23, 2004 met beforehand.  While

12 Defendants claim that the purpose of that pre-IEP meeting was

13 simply to develop goals and objectives for discussion at the

14 meeting, Plaintiff claims that the placement decisions were in

15 fact made in advance, without parental participation and in

16 violation of the IDEA.  In support of that contention, Plaintiff

17 cites to certain unresolved differences between members of the

18 IEP team as to treatment recommendations that he claims can only

19 lead to the conclusion that the actual decisions were made

20 beforehand.  Plaintiff's mother also claims that Jan Lucas, the

21 District's Director of Special Education, told her during a

22 telephone conversation that the District did not fund in-home

23 programs.

24    Based on testimony received from Defendants' witnesses (Jean

25 Crouse, Laurie Ferrell, Susan Watts and Betty DiRegolo), the

26 Hearing Officer concluded that only draft goals and objectives

27 were identified at the pre-IEP meeting.  (SEHO Decision, p. 21).

28 ///

15

School officials are permitted to form such opinions and compile reports prior to the IEP meetings, as long as a meaningful IEP meeting is subsequently conducted where various options are discussed and considered.  See Deal v. Hamilton County Bd. of Educ., 392 F.3d 840, 857-58 (6th Cir. 2005).  Significantly, the Hearing Officer also notes that the IEP Summary itself discusses information concerning Plaintiff's deficits and his present level of performance as presented by Plaintiff's parents, by Caprice Schweiger of LIFE, and by Plaintiff's private speech and language therapist, Brodi Wetherbee.  The Hearing Officer concluded that Plaintiff identified no information that he was unable to properly present at the IEP Hearing.  (SEHO Decision, p. 21).

Examination of the April 23, 2004 IEP Summary shows that some five different placement options, including the provision of in-home services, were considered by the IEP team before making its ultimate recommendation that Plaintiff participate in the STEPS classroom along with other individualized services as discussed above.[3]  (AR, DE at p. 1063).  The IEP Summary also shows that Ms. Schweiger, who at the time Operations Director for LIFE, Plaintiff's primary source of in-home care, attended and participated in the hearing.  The IEP Summary further received and reviewed a report on Plaintiff's progress from Ms. Wetherbee (AR, DE at pp. 1065-66), and the discussion section of the document (Id. at pp. 1065-74) is replete with references to input provided by Plaintiff's parents.

---

[3] This factor distinguishes the case at bar from Deal, where the court found an unofficial policy on the school's part of refusing to even consider, let alone provide, on-on-one home behavioral intervention services.  Deal, 392 F.3d at 858.

As Defendants point out, the fact that there was disparate testimony from Defendants' providers with respect to Plaintiff's particular service needs, and what measures were in fact necessary, points not to predetermination as to Plaintiff's placement offer but rather to development of a collaborative offer at the IEP meeting itself on the basis of information gleaned from various sources, including Plaintiff's parents and his service providers.  Finally, Plaintiff's mother's claim that she was told that the District never funded in-home programs is rebutted by the District's May 2004 unconditional offer to pay for such services.

The Court agrees with the Hearing Officer's determination that no procedural violation occurred with respect to Defendant's April 23, 2004 IEP meeting in that the record supports a finding that all relevant information was in fact considered.

**B.  Substantive Adequacy of April 23, 2004 IEP**

In order to show that they offered Plaintiff a valid FAPE, Defendants must demonstrate that the program, placement and related services they proposed were both designed to meet Plaintiff's unique needs and did in fact provide some educational benefit to Plaintiff.  Rowley, 458 U.S. at 201, 206-07; Gregory K., 811 F.2d at 1314.  Providing an appropriate public education in this regard "does not mean the absolutely best or 'potential-maximizing' education for the individual child."  Seattle Sch. Dist. No. 1 v. B.S., 82 F.3d 1493, 1500 (9th Cir. 1996).
///

Rather, school districts are simply required to provide a "basic floor of opportunity" that provides specialized instruction and related services individually designed to provide educational benefit.  <u>Rowley</u>, 458 U.S. at 207-208.

After weighing the evidence, the Hearing Officer found that the services provided Plaintiff were tailored to his individual needs and did provide the requisite educational benefit.  The Hearing Officer's determination that a FAPE was accordingly provided is both subject to deference and supported by a preponderance of the evidence in the view of this Court.

As indicated above, the parties largely agree on the scope of Plaintiff's needs, and even the type of services he requires as a result of those needs.[4]  The crux of their disagreement, both at the time of the SEHO hearing and through the present proceeding, concerns the particular goals and objectives targeted by the April 23, 2004 IEP as well as the providers best suited to address Plaintiff's educational requirements.  Plaintiff contends that the IEP's goals/objectives are not adequately tailored to his needs on grounds that some of the skills identified have already been mastered, and because the goals are not sufficiently measurable in any event.

///

_____

[4] Plaintiff's need for music therapy is one exception.  In concluding that the objectives of that therapy were already met by speech and language therapy as well as occupational therapy being offered to Plaintiff, however, the Hearing Officer accepted testimony from Defendants' representatives in that regard, and fully explained why he did not believe separate music therapy was necessary in Plaintiff's case for the provision of a valid FAPE. (SEHO Decision, p. 24).  The Court will not reweigh those determinations, which appear appropriate, through the present appeal.

18

In addition, while Plaintiff asserts that only his preexisting in-home providers can provide the FAPE to which he is entitled, Defendants counter that their own personnel are well equipped to address his needs.

The SEHO Decision shows that the Hearing Officer carefully weighed the evidence in determining that the placement offered by Defendants satisfied IDEA requirements.  First, with respect to the stated goals and objectives, the Hearing Officer determined that Defendants' witnesses, including Betty DiRegolo, Susan Watts, Linda Hess, and Jean Crouse, "persuasively testified" that the seventeen goals and objectives sufficiently targeted Plaintiff's unique educational needs on the basis of information provided by Plaintiff's providers in the form of assessments, written progress reports, and verbal information provided both prior to and at the time of the IEP hearing.  (SEHO Decision, pp. 28-29).  With respect to addressing Plaintiff's needs in the areas of expressive and receptive language, for example, the Decision states:

> "The Hearing Officer was persuaded by the testimony of the District's and PCOE's witnesses, along with the written reports and information provided at the IEP meeting regarding [Plaintiff's] present levels of performance, that the goals and objectives appropriately target his areas of deficit and that these goals and objectives will be fine-tuned following assessment of [Plaintiff].

(Id. at p. 29).

Similarly, the Hearing Officer concluded that the goals set forth in the IEP were sufficiently measurable, noting for example that the criteria established provides that objectives will be considered mastered when Plaintiff succeeds on 80 percent of presented opportunities over three consecutive days.  Id.

19

1    These detailed and well-reasoned findings are given

2  deference by the Court.  It would be improper for this Court to

3  substitute its judgment for that of the Hearing Officer, who

4  listened to some eleven days of testimony and argument, examined

5  literally thousands of pages of exhibits, and authored a

6  comprehensive and thorough forty-five page single-spaced

7  decision.

8    The Court similarly declines to revisit the Hearing

9  Officer's determination that Defendants' proposed service

10  providers were suitably qualified to furnish Plaintiff services

11  constituting a FAPE.  After hearing witnesses from both sides,

12  the Hearing Officer found, for example, that STEPS instructor

13  Jean Crouse was appropriately qualified to provide instruction to

14  Plaintiff given her experience in teaching autistic children and

15  the training she has received in instructional methodologies

16  geared to students with autism.  (SEHO Decision, p. 30).  The

17  Hearing Officer further determined that any classroom

18  distractions could be minimized through the use of partitions and

19  velcro covers.  Id.  In addition, the Hearing Officer analyzed

20  the credentials of the District's speech and language therapist,

21  Linda Hess, and found her to be both appropriately qualified and

22  able to administer therapy in a classroom setting through use of

23  the mitigating measures outlined above to curb distraction.  Id.

24  at pp. 31-32.  Finally, with respect to the provision of behavior

25  intervention services, the Hearing Officer found, also after

26  weighing conflicting testimony, that ABA services provided by

27  Advance Kids were suitably appropriate.  Id. at p. 34.

28  ///

1    In sum, the Hearing Officer's conclusion that the April 23,

2    2004 IEP met substantive IDEA requirements is amply supported.

3    The Court consequently defers to his decision.

4

5    **C.  Plaintiff's Entitlement to Reimbursement/Prevailing Party**
     **Status**

6

7    After Plaintiff's parents declined to accept Defendants'

8    September 2003 IEP offer, they advised the District of their

9    intent to continue funding Plaintiff's existing private services

10   and to seek reimbursement from Defendants for their costs

11   incurred in paying for those services.  On May 13, 2004,

12   Defendants unconditionally agreed to reimburse Plaintiff's

13   parents for such costs.  (Defs.' UF Nos. 22-23).  Although the

14   Hearing Officer did conclude that the September 12, 2003 initial

15   IEP offer did not constitute a FAPE (that determination was not

16   appealed and consequently is not addressed herein other than by

17   way of background), he did not find Plaintiff entitled to a

18   remedy for that shortcoming either in the form of either

19   compensatory education or reimbursement.[5]  Because Defendant's

20   offer of reimbursement was made nearly a month before the SEHO

21   hearing commenced on June 8, 2004, the Hearing Officer

22   specifically declined to make a finding as to the prevailing

23   party as to reimbursement for the period between Plaintiff's

24   third birthday and the second April 23, 2004 IEP.  (SEHO

25   Decision, p. 44).

26

27        [5] The only compensatory education at issue was for music
     therapy, and as explained above in footnote 4, the Hearing Officer
28   determined that the provision of such therapy was not essential
     to a finding of FAPE.

21

Plaintiff challenges that decision as erroneous.

In _Shapiro v. Paradise Valley Unified Sch. Dist._, 374 F.3d 857 (9th Cir. 2004), the Ninth Circuit considered whether the definition of prevailing party, enunciated by the Supreme Court in _Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res._, 532 U.S. 598, 600 (2001), applied to the IDEA's definition of prevailing party status[6] for purposes of assessing attorney's fees.  The _Buckhannon_ court held that a party is not considered prevailing unless he obtains a judgment or court-ordered consent decree affording some relief or creating a material alteration of the parties' legal relationship.  _Id._ at 604.  Rejecting the so-called "catalyst theory" for conferring prevailing party status on a party who merely accomplishes an objective represented by his lawsuit, the high court explained that "never have we awarded attorney's fees for a nonjudicial 'alteration of actual circumstances'.  _Id._ at 605-06.  In _Shapiro_, the Ninth Circuit extended the _Buckhannon_ standard for assessing prevailing status to the IDEA.  _Shapiro_, 374 F.3d at 865.

_Shapiro_ held that in order to be a prevailing party in the wake of _Buckhannon_, a plaintiff must not only achieve some material alteration of the legal relationship of the parties, but that change must also be judicially sanctioned.  _Id._  Subsequent Ninth Circuit law has confirmed that some judicial sanction or "imprimatur" is a prerequisite for determining that a plaintiff is a prevailing party under the IDEA.

///

---

[6] 20 U.S.C. § 1415(i)(3)(B).

1   <u>P.N. v. Seattle Sch. Dist.</u>, 458 F.3d 983 (9th Cir. 2006), citing

2   <u>Carbonell v. INS</u>, 429 4.3d 894, 898 (9th Cir. 2005).

3       Here, any judicial imprimatur as to Defendants'

4   unconditional reimbursement offer would necessarily stem from the

5   underlying SEHO decision.  As stated above, however, the Hearing

6   Officer expressly declined to make any finding as to prevailing

7   party status on the question of reimbursement given Defendants'

8   offer to pay for Plaintiff's private services between the time of

9   the initial IEP and the subsequent April 23, 2004 hearing.

10  Without such a finding, there can be no judicial imprimatur and

11  no entitlement to prevailing party status under the IDEA.[7]

12  ///

13  ///

14  ///

15  ///

16  _____

17      [7] Plaintiff also argues that he is a prevailing party under
    Cal. Educ. Code § 56507(b), the state law counterpart to the IDEA

18  provision discussed herein.  He cites <u>Santisas v. Goodin,</u> 17 Cal.
    4th 599, 621 (1998) and <u>Westside Cmty. For Indep. Living, Inc. v.</u>

19  <u>Obledo</u>, 33 Cal. 3d 348, 353 (1983) as support for that
    proposition.  Both cases are distinguishable; neither have any

20  connection with California's special education law.  <u>Westside</u>
    addresses under what circumstances the California private

21  attorney general doctrine, as codified at Cal. Civ. Proc. §
    1021.5, provides for attorney's fees to a "successful party" as

22  that term is used in the statute.  <u>Santisas</u> involves
    interpretation of prevailing party status where a contract

23  between the parties provided for attorney's fees to the
    "prevailing party" in litigation arising out of that contract,

24  but did not otherwise define the term "prevailing party".  The
    fact that the California Supreme Court in <u>Santisas,</u> adopted a

25  "pragmatic definition of the extent to which each party has
    realized its litigation objectives", for use in determining

26  prevailing party status under those circumstances, does not mean
    that the same standard applies to a state law statutory scheme

27  linked specifically to the protections afforded by the IDEA.
    (See Cal. Educ. Code § 56000).  In the case at bar, this Court

28  finds the federal cases as discussed above to be persuasive in
    interpreting prevailing party status both under the IDEA and
    state law.

**D. Additional Assessment of Plaintiff**

Defendants' April 23, 2004 IEP offer, in addition to proposing services responsive to Plaintiff's unique educational needs, also called for formal assessments of Plaintiff in his areas of suspected disability. (Defs.' UF No. 38).  The District had not assessed Plaintiff beforehand, and provided an Assessment Plan outlining needed assessment in academic, cognitive, communication, motor development, health, social/emotional, and pre-vocational/vocational areas.  (AR, DE at p. 3078).  According to Defendants, assessments were required in order to obtain further information as to Plaintiff's present levels of performance and to accordingly make any necessary adjustments to Plaintiff's educational program.  (See SEHO Decision, p. 40). Plaintiff, on the other hand, argued that assessments were unnecessary because his then providers had already provided reliable information about his current educational needs.

The Hearing Officer was persuaded by the fact that Defendants had never assessed Plaintiff before.  He further noted that California Education Code § 56320 requires assessment in all areas of suspected disability before special education placement is determined.

In Gregory K., the Ninth Circuit stated that "if parents want [their child] to receive special education under the Act, they are obligated to permit such testing."  Gregory K., 811 F.2d at 1315.

///

///

Moreover, under state law, the Hearing Officer found that the assessments performed by LIFE, which consisted primarily of observations and parent interviews, were distinguishable from those proposed by Defendants in order to comply with the requirements of Cal. Educ. Code § 56320.  The Hearing Officer also specifically found the testimony of Defendants' witnesses to be persuasive in establishing the necessity of the proposed assessments.  (SEHO Decision, p. 41).  He found unpersuasive Plaintiff's arguments that the assessments were requested for litigation, only.  Id.  The Hearing Officer's determination as to Plaintiff's need for assessment is well-reasoned and entitled to deference.

**E.   Transition for Stay-Put Services**

     Plaintiff contends that the Hearing Officer erred in finding that Plaintiff's right to an appropriate FAPE was not violated by the failure to incorporate a transition plan within SEHO's stay-put order of March 24, 2004.  As the Hearing Officer pointed out, however, the purpose of a stay-put directive is simply to maintain the status quo of a student's education program pending resolution of a due process hearing, which in this case commenced on June 8, 2004 following Defendants' second April 23, 2004 IEP proposal.  The SEHO directive at issue herein hence authorized the continued provision of the same services that had been offered to Plaintiff, and in the same setting.

///

///

The only difference was that the stay-put order permitted Defendants to offer the same in-home and clinic-based services that had been provided through private providers to providers of Defendants' choosing.  Defendants ultimately elected to continue provision of services through District therapists and through Advance Kids, a private agency which provided behavioral intervention, rather than through the therapists that had been treating Plaintiff and though LIFE, another private agency that provided behavioral intervention services.

Plaintiff argues that because the Hearing Officer did approve the April 23, 2004, which included a transition plan for the provision of Plaintiff's in-home and clinic-based services to services provided in a classroom setting, the Office must necessarily have erred in not providing an analogous transition plan with respect to the stay-put directive.  In his Decision, however, the Hearing Officer found that he could find no law establishing the right to transition services for a change in providers, only.  (SEHO Decision, p. 19).  Plaintiff has not cited any authority which establishing that proposition as inaccurate.  Moreover, despite Plaintiff's apparent argument to the contrary, any transition with respect to the stay-put (which provided for continued services within the same educational and/or therapeutic environment) is fundamentally different from the transition entailed in moving from Plaintiff's existing modalities of care to care provided within a classroom setting, as contemplated by the April 23, 2004 IEP.

///

///

26

1    The Hearing Officer was not remiss in finding that no

2 transition plan was necessary in preserving Plaintiff's

3 educational status quo through SEHO's March 24, 2004 stay-put

4 order.

5                              **CONCLUSION**

6    Based on all the foregoing, and following exercise of its

7 independent judgment after fully reviewing the administrative

8 record in this matter, the Court finds that the Hearing Officer's

9 decision dated November 4, 2004 is both entitled to substantial

10 deference and supported by a preponderance of the evidence.

11 Consequently this Court elects to accept the Hearing Officer's

12 findings in their entirety.  Ojai, 4 F.3d at 1473-73.  Inasmuch

13 as the Court consequently rejects the entire premise of the

14 instant lawsuit, which alleges error on the part of the Hearing

15 Officer, Defendants are entitled to summary judgment.  Because

16 the Court grants Defendants' motion, it necessarily denies

17 Plaintiff's cross-request that summary judgment be granted on his

18 behalf.[8]

19    IT IS SO ORDERED.

20 DATED: September 29, 2006

21

22

23                              _____
                                MORRISON C. ENGLAND, JR
24                              UNITED STATES DISTRICT JUDGE

25

26

27 ────────────────

28    [8] Because oral argument will not be of material assistance,
the Court ordered this matter submitted on the briefing.  E.D.
Cal. Local Rule 78-230(h).